MR. Kevin A. Johnson, E-63602
NAME
Ironwood State Prison
PRISON NUMBER
P.O. Box 2199/B3-103u
CURRENT ADDRESS OR PLACE OF CONFINEMENT
Blythe, Calif. 92226
CITY, STATE, ZIP CODE

2254 _____ 1983 _____
**FILING FEE PAID**
Yes _____ No ✓
**IFP MOTION FILED**
Yes ✓ No _____
**COPIES SENT TO**
Court ✓ Pro Se _____

**FILED**
MAY 2 9 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Kevin A. Johnson ,
(FULL NAME OF PETITIONER)
                                        PETITIONER

v.

Debra Dexter, Warden,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])
                                        RESPONDENT
                    and

_____ ,
The Attorney General of the State of
California, Additional Respondent.

Civil No. **08 CV 0956 WQH WMc**
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1.  Name and location of the court that entered the judgment of conviction under attack: _____
    San Diego Superior Court, 220 W. Broadway, San Diego, Calif. 92101
2.  Date of judgment of conviction: _____
3.  Trial court case number of the judgment of conviction being challenged: _____
    CR 105960
4.  Length of sentence: _____ 25 To Life   . _____

CIV 68 (Rev. Dec. 1998)                                    K:\COMMON\FORMS\CIV-68.

5. Sentence start date and projected release date: _MAY 9, 1990, PROJECTED Release DATE 2012_

6. Offense(s) for which you were convicted or pleaded guilty (all counts): _____
   _MURDER, Robbery with Use of Deadly weapons_ .
   _____

7. What was your plea? (CHECK ONE)
   (a) Not guilty        ☑
   (b) Guilty·           ☐
   (c) Nolo contendere   ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury        ☑
   (b) Judge only  ☐

9. Did you testify at the trial?
   ☐ Yes  ☑ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☑ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: _DENIED_
    (b) Date of result, case number and citation, if known: _D102676_
        _JANUARY 30, 1992_
    (c) Grounds raised on direct appeal: _THE COURT ERRED IN DENYING MOTION TO_
        _SEVER THE COURT ERRED IN PERMITTING THE PEOPLE TO INTRODUCE THIRD_
        _PARTY STATEMENTS_
        _____

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: _DID NOT Seek Review_
    (b) Date of result, case number and citation, if known: _____
        _____
    (c) Grounds raised: _____
        _____
        _____
        _____
        _____

13. If you filed a petition for certiorari in the <u>United States Supreme Court</u>, please answer the following with respect to that petition:

    (a) Result: _____

    (b) Date of result, case number and citation, if known: _____

    _____

    (c) Grounds raised: _____

    _____

    _____

    _____

    _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Superior Court</u>?
  ☐ Yes  ☑ No

15. If your answer to #14 was "Yes," give the following information:

    (a) <u>California Superior Court</u> Case Number: _____

    (b) Nature of proceeding: _____

    _____

    (c) Grounds raised: _____

    _____

    _____

    _____

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes  ☑ No

    (e) Result: _____

    (f) Date of result: _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the <u>California Court of Appeal</u>?
  ☐ Yes  ☑ No

17.  If your answer to #16 was "Yes," give the following information:

    (a)  California Court of Appeal Case Number: ___D036583___

    (b)  Nature of proceeding: _WRiT of HabeAS CoRpus_

    (c)  Grounds raised: _____

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☑ No

    (e)  Result: ___DeNied___

    (f)  Date of result: __JANuARY 22, 2001__

18.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
    ☐ Yes  ☐ No

19.  If your answer to #18 was "Yes," give the following information:

    (a)  California Supreme Court Case Number: _S038025_ /_S096388_

    (b)  Nature of proceeding: _____

    (c)  Grounds raised: _____

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?

        ☐ Yes  ☑ No

    (e)  Result: ___DeNied___

    (f)  Date of result: __MARcH 30, 1994__ / __AuGusT 29, 2001__

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>California Supreme Court</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

*All Grounds Now Exhausted*

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your first federal petition for writ of habeas corpus challenging this conviction?
   ☐ Yes ☑ No   (IF "YES" SKIP TO #22)
   (a) If no, in what federal court was the prior action filed? *U.S. Dist. Court/Southern*
       (i) What was the prior case number? _____
       (ii) Was the prior action (CHECK ONE):
            ☐ Denied on the merits?
            ☑ Dismissed for procedural reasons?
       (iii) Date of decision: *June 17/1998*
   (b) Were any of the issues in this current petition also raised in the prior federal petition?
       ☐ Yes ☐ No
   (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
       ☐ Yes ☑ No  *Case was Dismissed Because I Failed To Exhaust.*

<u>CAUTION:</u>

- <u>Exhaustion of State Court Remedies:</u>  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- <u>Single Petition:</u> If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- <u>Factual Specificity:</u> You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: Petitioner Contends that He was Denied His Right To Cross Examine A Key Prosecution Witnesses Testimony Robert Hammer's out of court statements that evidence testimony would violate Petitioner's Sixth And Fourteenth Amendment Right To Be Confronted with the witness Against Him To Have A Fair Trial.

Supporting FACTS (state *briefly* without citing cases or law) Petitioner's Right To Confront And Cross-Examine Robert Hammer's out of court statements Regarding Petitioner being the shooter violated Petitioner's Confrontation Clause Regardless of whether His statements were Deemed Reliable By the Court where statements were Testimonial And defendant was Not Given Prior Opportunity to Cross-Examine this witness. On April 23, 1989 witness Robert Hammer Had A Telephone Interview with Det. Terry DeGelder of the San Diego Police Department. (RT. Page 1.) Mr. Hammer Spoke To the Detective If rater or not there was Any Suspects Arrested for the Murder of a Cab Driver, Mr. Hammer Identified the Person Responsible As Kevin Johnson (Petitioner) Mr. Hammer's Testimony went furt To State That He Saw the Taxi cab Come Down the Street, He Can See the Guys get out the Back of the Car (RT. Page 3) And he Hears Boom Referring As A Guy shot. In Petitioner's Case the State Admitted Robert Hammer's Testimonial Statements Against Petitioner despite the fact That Petitioner Had No opportunity to Cross-Examine Him, that Alone is Sufficient Enough To make out A Violation of the Sixth Amendment Right To A Fair Trial, the Court Knew Testimonal Statements Are AT Issue And the only Indicium of reliability Sufficient To Satisfy Constitutional Demands is the one the Constitutional Actually Prescribes. Further

Did you raise GROUND ONE in the California Supreme Court?
☑ Yes ☐ No.

(b) **GROUND TWO**: PETITIONER CONTENDS THAT HE WAS DENIED HIS RIGHT TO CROSS-EXAMINE PROCUTIONS WITNESS SCOTT LUBITZ OUT-OF-COURT STATEMENTS, THIS VIOLATION DENIED PETITIONER THE RIGHTS OF THE SIXTH AMENDMENT RIGHT TO HAVE A FAIR TRIAL.

Supporting FACTS (state *briefly* without citing cases or law): _____

THE DISTRICT ATTORNEY MR. AVILA INTRODUCED (R.T.     )
DAMAGING STATEMENTS THAT MR. MADDUX SUPPOSEDLY TOOK FROM
SCOTT LUBITZ IN JUNE 1989 ABOUT THE PETITIONER COMMITTED THE
MURDER OF A CAB DRIVER. SCOTT LUBITZ TESTIFIED "I DON'T REMEM-
BER SPEAKING TO HIM REFERRING MR. MADDUX OF THE DISTRICT ATTOR-
NEY'S OFFICE. SCOTT LUBITZ TESTIFIED THAT HE WAS FAMILIAR WITH PETITIONER
BUT HE NEVER TALKED TO PETITIONER ABOUT THE SHOOTING OF MICHAEL
CARROLL, AND HE DID NOT RECALL SEEING PETITIONER THE NIGHT OF
THE SHOOTING OR EVER TELLING SOMEONE HE HAD (PAGE 12). LUBITZ
TESTIFIED, HE DID NOT RECALL TALKING TO A DISTRICT ATTORNEY'S
INVESTIGATOR AT ALL AND THEREFORE HAD NO RECOLLECTION OF TALKING
TO AN INVESTIGATOR ABOUT THESE    SUBJECTS OR ABOUT PIZZA
ROBBERIES OR ABOUT STATEMENTS ANYONE HAD MADE ABOUT AMMUNITION.
SHOWN WHAT WAS SAID TO BE THE INVESTIGATOR'S     REPORT
OF THE INTERVIEW, LUBITZ SAID IT DID NOT REFRESH HIS RECOLLECT-
ION SUBSEQUENTLY, OVER OBJECTION THE COURT PERMITTED THE PROSEC-
UTOR TO CALL INVESTIGATOR STANLEY MADDUX TO RECOUNT STATEMENTS
SCOTT LUBITZ HAD MADE TO HIM ON JUNE 16, 1989 (PAGE 12)
PETITIONER'S LAWYER STATED, CASE LAW PERMITS THIS I'D LIKE HIM TO
NAME A CASE, PEOPLE V. SAM. 71 Cal. 2d. SAYS THAT THE TESTIMONY
OF A WITNESS THAT HE DOES NOT REMEMBER AN EVENT IS NOT INCON-
SISTENT WITH HIS TESTIMONY, AND THEREFORE THE PRIOR INCONSISTENT
STATEMENT MAY NOT BE ADMITTED. (R.T. 878) ALSO (R.T. 879) THE COURT
WENT FURTHER TO SAY. I WANTED TO PUT ON RECORD (941 R.T.) ONE

Did you raise GROUND TWO in the California Supreme Court?
☑ Yes ☐ No.

(c) **GROUND THREE:** PETITIONER CONTENDS THAT HE WAS DENIED HIS RIGHT TO CROSS-EXAMINE PROSECUTIONS INVESTIGATOR STANLEY MADDUX STATEMENTS MADE TO HIM BY SCOTT LUBITZ OUT-OF-COURT STATEMENTS, THUS VIOLATING PETITIONERS SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESS AGAINST HIM TO HAVE A FAIR TRIAL.

Supporting FACTS (state *briefly* without citing cases or law): INVESTIGATOR STANLEY MADDUX TESTIFIED HE INTERVIEW SCOTT LUBITZ ON JUNE 16, 1989 HE (MADDUX) TESTIFIED LUBITZ TOLD HIM APPELLANT (PETITIONER KEVIN JOHNSON) ADMITTED HE ROBBED A PIZZA MAN OF HIS CAR, MONEY AND SOME PIZZA. LUBITZ ALSO TOLD INVESTIGATOR MADDUX HE SAW PETITIONER WITH GREG WYATT BEFORE THE SHOOTING ALSO PETITIONER TOLD HIM THEY WERE GOING TO MAKE SOME MONEY THAT NIGHT. PETITIONER SHOWED LUBITZ A PISTOL THAT PETITIONER HAD IN HIS PANTS WAISTBAND. LUBITZ TOLD INVESTIGATOR MADDUX THAT PETITIONER TOLD HIM THEY WERE GOING TO ROB A TAXI DRIVER. MR. LUBITZ TOLD INVESTIGATOR MADDUX THE NEXT AFTERNOON, PETITIONER WAS COMMENTING ON THE TALK AROUND THE NEIGHBORHOOD ABOUT THE KILLING AND TOLD HIM IF ANY BODY FINGER HIM THERE WILL BE MORE BODIE'S LAYING AROUND. MR. LUBITZ TOLD MADDUX THE DAY AFTER THAT PETITIONER SAID HE NEEDED SOME 9 MILLIMETER BULLETS, THAT HE HAD USED LAST TWO A COUPLE NIGHTS BEFORE.

SUPREME COURT JUSTICE HELD: OUT-OF-COURT STATEMENTS BY WITNESS THAT ARE TESTIMONIAL ARE BARRED. STANLEY MADDUX NEVER TESTIFIED AT PRELIMINARY ABOUT THE STATEMENTS SCOTT LUBITZ MADE TO HIM.

Did you raise <u>GROUND THREE</u> in the California Supreme Court?

☑ Yes ☐ No.

23. Do you have any petition or appeal now pending in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☑ No

24. If your answer to #23 is "Yes," give the following information:
   (a) Name of Court: _____
   (b) Case Number: _____
   (c) Date action filed: _____
   (d) Nature of proceeding: _____
   _____
   (e) Grounds raised: _____
   _____
   _____
   _____
   _____
   (f) Did you receive an evidentiary hearing on your petition, application or motion?
   ☐ Yes  ☑ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
   (a) At preliminary hearing: _____
   _____
   (b) At arraignment and plea: _____
   _____
   (c) At trial: Sheela & Sheela, ATTorneys AT Law, 2668 Second Avenue, San Diego, California . 92101
   (d) At sentencing: _____
   _____
   (e) On appeal: _____
   (f) In any post-conviction proceeding: _____
   _____
   (g) On appeal from any adverse ruling in a post-conviction proceeding: _____
   _____

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
    ☐ Yes  ☑ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    ☐ Yes  ☑ No

    (a) If so, give name and location of court that imposed sentence to be served in the future:
    _____

    (b) Give date and length of the future sentence: _____
    _____

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
    ☐ Yes  ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _____
    _____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

5-27-2008                          *Kevin W. Johnson*
_____            _____
(DATE)                            SIGNATURE OF PETITIONER

1   More. The witness Mr. Hammer states within the 30 seconds of that
2   "He" Saw the Two Guys one Kevin (Petitioner) And Another Guy run
3   Down the end of the alley and up the Hill. Mr. Hammer states He'll
4   Bend over backwards to Help the Police (R.T. 5) and (R.T. 6) He states
5   "Well Listen To This. The check is out. why don't we Try working on
6   Some kind of Deal." Petitioner at this Time Points out that Robert
7   Hammer never Testified at the Preliminary Hearing, or at any other
8   Pretrial Motion. under the new Law that was Contrary To Federal
9   Law that had Been Clearly established By the Supreme Court of the
10  United States of America. The Supreme Court Justice Scalia. Held that:
11  (1): Out of Court Statements By witnesses that Are Testimonal Are Barred,
12  under the Confrontation Clause, unless witness Are unavailable and
13  defendants had "Prior" opportunity To cross - Examine witnesses. Regard-
14  Less of whether such Statements are Deemed Reliable By Court. Also.
15  Applies not only To In court Testimony. But also to out-of-court
16  Statements Introduced at Trial. unless witness is unavaible and
17  Defendant had Prior opportunity To cross-Examine witness. Include at
18  A Minimum Prior Testimony at Preliminary Hearing. Grand Jury, or
19  at a former Trial And statements Elicited During Police Interrogat-
20  ions. Petitioner Points out that the new Law By the Supreme
21  Court Case Crawford J. Washington as of 2004 would show that
22  Petitioner was Denied the Right To confront the witness Against
23  Him at Preliminary Hearing or at Trial. That would Violate
24  Petitioners Right To a Fair Trial under the 6th Amendment of
25  the U.S. Constitution. The Court Inquired To the District
26  Attorney Mr. Avila (R.T. 113) How many People Testified at the
27  Preliminary Hearing In the Case? The District Attorney Mr.
28  Avila Stated. whom these Available witnesses were Also That A

1  MURDER CASE WHO WAS IN THE CAB AT THE TIME THAT THE EVENTS
2  OCCURED THAT TESTIFIED (R.T. 113) THERE WAS A WITNESS TO EACH
3  OF THE ALLEGED PIZZA ROBBERIES THAT TESTIFIED, AND THERE WERE
4  CERTAIN POLICE OFFICERS THAT TESTIFIED. THAT WAS THE LIMITED EXTENT
5  OF THE TESTIMONY AT THE PRELIMINARY EXAMINATION. PETITIONER POINTS
6  OUT THAT FROM THE RECORD AND THE EXHIBITS ROBERT HAMMER HAS
7  NOT HAD ANY PRIOR TESTIFIED BEFORE TRIAL. WHICH WOULD MAKE HIS
8  TESTIMONY BARRED BY THE NEW LAW IN VIOLATION OF THE SIXTH AMEND-
9  MENT RIGHT TO HAVE A FAIR TRIAL. MR. ROBERT HAMMER, WAS SWORN
10 IN BY THE CLERK OF THE COURT. THIS WOULD BECOME THE ONLY TIME ROBERT
11 HAMMER WOULD TESTIFY. HE TESTIFIED THAT (RT. 544) HE COULD SEE A
12 COUPLE OF PEOPLE STANDING AROUND AND THEY WERE KIND OF POINTING
13 AT EACH OTHER. AND I SAW A COUPLE OF PEOPLE, CHECK THE TIME. I BET
14 THEY SHOT THE CAB DRIVER. PETITIONER POINTS OUT THAT ROBERT HAMMER
15 ACCUSED KEVIN (PETITIONER) AS ONE OF THE PEOPLE THAT RAN AWAY FROM
16 THE CAB. ROBERT HAMMER TESTIFIED HE CALLED AND SPOKE TO DET.
17 DEGELDER (RT. 547) IN TRIAL MR. HAMMER TESTIFIED HE SPOKE
18 TO MR. MADDOX OF THE DISTRICT ATTORNEY OFFICE (RT. 563) ABOUT
19 THE SHOOTING OF A CAB DRIVER.

21  THIS NEW RECTROATIVE CASE CRAWFORD J. WASHINGTON.

23  SUPPORTING CASE:

24  CRAWFORD J. WASHINGTON, CITE AS 124 S.CT. 1354 (2004)

25  KENTUCKY V. STINGER, 482 U.S. 730, 737 107 S.CT. 2658
    96 L.Ed. 2d 631 (1987)

26  MARYLAND V. CRAIG, 497 U.S. 836, 845, 110 S.CT. 3157

27  111 L.Ed. 2d 666 (1991)

TELEPHONE INTERVIEW OF "BOB" BY DET. DEGELDER - SPDP 4-23-89          1

      (Telephone beeps)

Bob   :   Hello.

Degelder: Bob?

Bob   :   Yes.

Degelder: Yes.  Detective Terry Degelder, San Diego Police Department.

Bob   :   What's the name again?

Degelder: Degelder.

Bob   :   Degelder.  Mr. Degelder.  How you doing?

Degelder: Bob's your first name?

Bob   :   Right.

Degelder: What's your last name, Bob?

Bob   :   I'd rather not get into that for the report reasons.

Degelder: Okay.

Bob   :   Uh, man I tried to call you guys for about like an hour yesterday.  I got a run around of different phone numbers and different people to talk to and the biggest thing they got the closest I got to anything was uh come down and fill out a form and it will be up to two weeks before somebody can talk to you.

Degelder: I'm sorry to hear that.

Bob   :   So I...

Degelder: You got somebody who'll listen to you now.

Bob   :   Okay, uh, you know... are you familiar with what I'm talking about over on Bates Street here?

Degelder: Yes, I am.

Bob   :   The taxi driver.

Degelder: Um hm.

Bob   :   You guys got any suspects?

Degelder: Well, we're looking.

TELEPHONE INTERVIEW OF "BOB" BY DET. DEGELDER - SPDP 4-23-89                3

Degelder: Um hm.

Bob :     Okay, right across from me you go ahead, you look and I can
          see in the middle of the court next door.  Which the taxicab
          is parked in the rear of.  I can see the guys get out of the
          car and then walk to the back of the car.  Okay?  Boom!
          That's all I saw.  All right?  Seconds later bang bang.  I
          hear the shots I go to my (unintelligible) say hey!  He just
          shot the taxicab driver.  Get the time.  We don't have a
          phone or you would have got a call.  We got the time.  It
          took nine and a half minutes before the cruiser got there.

Degelder: Huh.

Bob :     In that nine and a half... I... within 30 seconds of that I
          saw the two, two gu... one Kevin and the other guy, I don't
          know his name but he's always... he's a sidekick, they ran
          different directions.  One ran down the end of the alley and
          then up the hill.  The other one came out front and ran up
          the street.  I saw them both (unintelligible).  I know what
          they do.  They held up the pizza man awhile ago.  You know.
          That's their thing.

Degelder: They held up who?

Bob :     Uh, pizza man here awhile ago.

Degelder: Okay.

Bob :     You know, that's what they do.

Degelder: Did you know that?  How did you know that?

Bob :     Nah, that's just what everybody talks.

Degelder: Okay.

Bob :     Hell a lot of a dog shit.

Degelder: What kind of contact do you have with Kevin?

Bob :     Well, what kind do you need?

Degelder: I mean mean do you say hi to him or the (unintelligible).

Bob :     I'd say no.  He's not a... he's an acquaint... you got to be
          cool or be (unintelligible) up, you know.  What's up?  You
          know what's up?  That kind of thing.

Degelder: Well Bob, you know, uh, robbery is one thing uh but murder is
          something else.

TELEPHONE INTERVIEW OF "BOB" BY DET. DEGELDER - SPDP 4-23-89          5

Bob     :   You know.  I, I, I got... I'll got ahead... I just don't want
            my son of a bitchin' name on the report.

Degelder:   I understand that Bob.

Bob     :   But I'll go... I'll bend over backwards to help you in anyway
            I fuckin' can.

Degelder:   Well, I appreciate that.

Bob     :   You know because...

Degelder:   'Cause uh...

Bob     :   You want to meet the guy?  Okay, you come up...you you send
            somebody who don't look like a cop, come over come over to me
            with a bag of weed or a bag of dope and uh and uh offer
            something to the guy.  Go ahead kick it with him a little bit
            and he asked me if I if I knew any dea... he tried to... he
            approached me last night to try to find some dealers that he
            could hit up.  He wants to go hit some dealers.

Degelder:   Who does he live there with?

Bob     :   Uh, he li... I believe it's his uh, I'm not sure if its' his
            stepmother or real mother.

Degelder:   Okay.

Bob     :   She's pretty uh, she's just an old... she's not really up on
            what's up.

Degelder:   Okay.  Now you said you had friend with you when this
            happened?

Bob     :   No, my buddy was just leaving.  He, he drove away.

Degelder:   He didn't see anything?

Bob     :   No.  He just... thank God because he was right, you know...

Degelder:   Yeah.

Bob     :   He was just driving... he was driving away as they were
            driving down the street in the taxi.

Degelder:   Okay.  If we make an arrest on this and uh Kevin gets
            arrested for uh the for shooting that cab driver?  Would you
            consider about uh, being a witness then?

Bob     :   What do you need me for a witness for then?

TELEPHONE INTERVIEW OF "BOB" BY DET. DEGELDER - SPDP 4-23-89          6

Degelder: Well, because you witnesses the very important part of uh, of what happened, Bob.

Bob  :    (unintelligible).

Degelder: You know, we, we have programs you know, where we can relocate you, we can...

Bob  :    Oh I know that.

Degelder: We can provide you protection.  All that stuff.

Bob  :    Yeah.  I know that all ready.

Degelder: And we can certainly talk to your uh....

Bob  :    Well listen to this, listen to this.  The check is out.  Why don't we try working on some kind of deal.  You check out what kind of gun did it and he's still got the motherfucker.

Degelder: Okay.

Bob  :    Why don't we work on something... you try to figure out some way that uh, you and I can meet, get together, go ahead kick it as buddies, pals or whatever for drug reasons or money reasons or whatever and you can meet the motherfucker.  He will gladly do a job for you.  He is... he is... anything to do with money... if you tell him that he can pull out that gun and make ten dollars he'll do it.

Degelder: Okay.

Bob  :    And the thing is he don't care, as he puts it, "I don't care who got the motherfucking hero, I got to put them in their place."

Degelder: Have you got something to write my name and number down?

Bob  :    I sure don't.  I, I, got got... I'll tell you what I've got. i've got three dollars and fifty cents to my name and I'm walking up to the store to get something to eat for the house.

Degelder: Okay.

Bob  :    You know.  I'm, a poor son of a bitch.  I ain't asking for, you know, a paid informant, but you know, I, I'm just doing this because this shit ain't right.

Degelder: Um hm.

Bob  :    And uh, I ain't got a phone there and I ain't got no money.

1  PEOPLE THAT ARE INVOLVED, THE WITNESSES, THEIR BACKGROUND AND

2  SO FORTH, I THINK THAT IT IS POSSIBLE THAT MY CASE COULD BE

3  PREJUDICED IF IT WAS CONTINUED.  IT'S THE TYPE OF CASE WHERE

4  YOU NEVER KNOW FOR SURE IF SOME OF YOUR WITNESSES ARE GOING TO

5  BE UNAVAILABLE.  THE CASE HAS, BECAUSE OF PROCEEDINGS THAT

6  HAVE OCCURRED DURING IT, DRAGGED ON SOMEWHAT LONGER THAN OTHER

7  CASES -- SOME OTHER CASES OF THE SAME TYPE.  TO THIS POINT WE

8  HAVE BEEN ABLE TO KEEP TRACK OF THE INDIVIDUALS INVOLVED.

9       ONE THING THAT I'M CONCERNED ABOUT AT THIS POINT IS

10  THAT I HAVE ONE WITNESS WHO IN AN UNRELATED AND SUBSEQUENT

11  FASHION HAS NOW GOT HIMSELF IN A SITUATION WHERE HE HAS

12  PENDING CHARGES OF HIS OWN, FELONIOUS CHARGES.  HE HAS A TRIAL

13  THAT'S SET -- IN FACT, I BELIEVE IT'S TRAILING AS WE SPEAK, IF

14  IT HASN'T BEEN SENT OUT.  I DON'T KNOW, IF THAT TRIAL RESULTS

15  IN A CONVICTION AND THIS PERSON IS SUBSEQUENTLY SENTENCED TO

16  STATE PRISON, IF HE WOULD BE WILLING TO COME INTO THIS COURT

17  AND TESTIFY.

18       HE HAS TWO LAWYERS AT THIS POINT.  I HAVE PERSONALLY

19  SPOKEN TO BOTH HIS LAWYERS.  AND AT THIS POINT HE IS WILLING

20  TO COME INTO COURT AND TESTIFY ABOUT WHAT HE KNOWS.  BUT AS I

21  SAY, I REALLY DON'T KNOW AND -- WHAT HIS POSITION IS GOING TO

22  BE IF HE GOES TO TRIAL AND THEN HE FINDS HIMSELF IN AN

23  ENVIRONMENT WHERE IF THE DEFENDANT GOES TO TRIAL AND IS

24  CONVICTED, HE WOULD BE IN THE SAME ENVIRONMENT.

25       THE COURT:  HOW MANY PEOPLE TESTIFIED AT THE PRELIMINARY

26  HEARING IN THE CASE?

27       MR. AVILA:  THE PRELIMINARY HEARING DID NOT RESULT IN ALL

28  OF THE AVAILABLE WITNESSES TESTIFYING.  THERE WAS A WITNESS IN

1    YOU COULD SEE RIGHT THROUGH THE WALKWAY THERE, I GUESS YOU

2    WANT TO CALL IT, BETWEEN THE BUILDINGS -- COULD SEE THE CAB.

3        Q    WHEN YOU SAY THE "WALKWAY AREA," IS THAT SHOWN ON

4    PEOPLE'S 1?

5        A    THAT'S RIGHT.  WHERE YOU GET TO THE LAST "2" OF THE

6    NUMBER, THAT WALKWAY DEAL.

7        Q    COULD YOU USE THE POINTER AND POINT TO THE AREA

8    THAT YOU ARE REFERRING TO?

9        A    RIGHT THROUGH HERE.  YOU CAN SEE RIGHT THROUGH TO

10   THE BACK ALLEY PART.  YOU CAN SEE RIGHT THROUGH THERE.

11       MR. AVILA:  FOR THE RECORD, THE WITNESS HAS JUST

12   POINTED TO THE BUILDING LABELED "5722 BATES STREET," TO THE

13   DOORWAY PASSAGEWAY THAT IS DIRECTLY BENEATH THE SECOND "2" IN

14   THE LABELING.

15   BY MR. AVILA:

16       Q    WHAT COULD YOU SEE AT THAT POINT?

17       A    I COULD SEE A COUPLE OF PEOPLE STANDING AROUND AND

18   THEY WERE KIND OF POINTING AT EACH OTHER, AND I SAW A COUPLE

19   OF PEOPLE -- ONE GUY RUN PAST, THEN ANOTHER ONE TURN AND RUN,

20   AND THEN THE CAB DRIVER, OR THE BIGGER GUY, LOOKED LIKE HE

21   WAS REACHING OUT TOWARDS SOMEBODY, AND THEN THEY

22   BOTH -- EVERYBODY DISAPPEARED AROUND THE -- GOSH, I'M NOT

23   DOING TOO GOOD.

24       EVERYBODY DISAPPEARED AROUND THE BACK PART OF THE

25   BUILDING AND THERE WERE A COUPLE OF FLASHES AND BANGS.  I

26   LOOKED AT MY GIRLFRIEND AND I SAID, "CHECK THE TIME.  I BET

27   THEY JUST SHOT THE CAB DRIVER."

28       Q    WHEN YOU SAY THERE WERE A COUPLE OF FLASHES, WHAT

1    ASKED YOU TO STAY BACK FROM THAT AREA?

2         A    YEAH, KEPT TELLING ME TO GET BACK.

3         Q    NOW, DID YOU MAKE ANY FURTHER EFFORT TO CONTACT LAW

4    ENFORCEMENT?

5         A    YEAH.  I THINK IT WAS A FEW DAYS LATER.  I CAN'T

6    REMEMBER THE DATE EXACTLY, BUT I KEPT TRYING TO CALL AROUND

7    TO TRY TO TALK TO SOMEBODY, AND THEY KEPT PUTTING ME ON HOLD,

8    THEN TELLING ME TO COME DOWN AND FILL OUT A REPORT.  AND

9    FINALLY THEY WANTED TO TALK TO ME, SEND ME TO AN NTF GUY.

10   THEN HE LISTENED TO WHAT I HAD TO SAY AND HE HAD ME STAND BY

11   THE PHONE AND THEN DETECTIVE DEGELDER CALLED ME BACK.

12        Q    HOW MANY PHONE CALLS WOULD YOU SAY YOU MADE TRYING

13   TO GET IN TOUCH WITH LAW ENFORCEMENT TO GIVE THEM YOUR -- TO

14   TALK TO THEM?

15        A    PROBABLY ABOUT SIX.

16        Q    AS -- OVER WHAT SPAN OF TIME DID THAT TAKE TO MAKE

17   THAT CONNECTION?

18        A    COUPLE OF DAYS, TWO DAYS WORTH.  TWO DIFFERENT

19   DAYS.

20        Q    NOW, DID YOU EVER COME IN CONTACT -- OR STRIKE

21   THAT.

22             YOU INDICATED THAT YOU TALKED TO A DETECTIVE BY THE

23   NAME OF DEGELDER?

24        A    YES, SIR.

25        Q    WHEN YOU TALKED TO THIS DETECTIVE THE FIRST TIME,

26   WAS THAT IN PERSON OR ON THE TELEPHONE?

27        A    OH, ON THE PHONE.

28        Q    WHAT WERE YOU REFERRING TO WHEN YOU SAID YOU WERE

1  SAW FOUR PEOPLE IN THE CAB.

2      A   YES, SIR, I DID.  YES, SIR.  THAT'S WHAT I SAID,

3  YES, SIR.

4      Q   IT WAS ONLY AFTER MR. AVILA SHOWED YOU A REPORT OF

5  SOMETHING YOU TOLD SOMEONE FROM THE D.A.'S OFFICE THAT YOU

6  THEN ARE TRYING TO BACK AWAY FROM THE FOUR PEOPLE; RIGHT?

7      A   NO, SIR.  I AM NOT TRYING TO BACK AWAY.  I AM JUST

8  TRYING TO STAY -- IT'S BEEN QUITE SOME TIME AND I HAVEN'T

9  SEEN THAT REPORT SINCE THEN, AND I DON'T -- JUST LIKE YOU

10 REFER TO YOUR NOTES, THAT'S ALL I WAS DOING.

11     Q   NOW, LET ME GET YOUR LAST ANSWER.  YOU SAID YOU

12 HAVE NOT SEEN THAT REPORT SINCE WHEN YOU FIRST GAVE IT?

13     A   THAT ONE, NO.

14     Q   DIDN'T YOU SPEAK TO MR. MADDOX FROM THE DISTRICT

15 ATTORNEY'S OFFICE LAST NIGHT?

16     A   LAST NIGHT AND I LOOKED AT IT.

17     Q   EXCUSE ME.  YOUR ANSWER IS YES, I SPOKE TO

18 MR. MADDOX LAST NIGHT?

19     A   YES, I SPOKE TO MR. MADDOX LAST NIGHT.

20     Q   OKAY.  AND WHEN YOU SPOKE TO MR. MADDOX LAST NIGHT,

21 HE WENT OVER WHAT YOU HAD TOLD HIM BEFORE, DIDN'T HE?

22     A   I WENT OVER IT.  NOT THAT ONE.  I WENT OVER ANOTHER

23 ONE.

24     Q   YOU DID NOT GO OVER THAT REPORT WITH MR. MADDOX

25 LAST NIGHT?

26     A   HE BROUGHT ME THE REPORT AND I READ OVER -- I READ

27 IT OVER AND HE DIDN'T HAVE ANYTHING TO SAY.  WE DIDN'T

28 EXCHANGE ANYTHING.  THE ONLY THING I ASKED --

ARGUMENT

I.  ADMISSION OF A PRIOR OUT-OF-COURT STATEMENT OF
    THE WITNESS SCOTT LUBITZ WAS PREJUDICIAL ERROR

The court permitted testimony from a District Attorney's investigator recounting out-of-court statements of Scott Lubitz, the witness who in his own testimony did not recall having made the statements. These statements conveyed admissions and confessions by appellant that were highly inculpatory. The investigator's testimony was clearly inadmissible hearsay (cf. Evid. Code, §§ 1200, 1235), and admission of it was reversible error.

A.  PROCEEDINGS BELOW

Called as a prosecution witness, Scott Lubitz testified that he was familiar with appellant but he never talked to appellant about the shooting of Michael Carroll, and he did not recall seeing appellant the night of the shooting or ever telling someone he had. Similarly, Lubitz testified, he did not recall talking to a District Attorney's investigator at all, and therefore had no recollection of talking to an investigator about these subjects, or about pizza robberies or about statements anyone had made about ammunition. Shown what was said to be the investigator's report of the interview, Lubitz said it did not refresh his recollection. (R.T. 900-905.)

Subsequently, over objection the court permitted the prosecutor to call investigator Stanley Maddux to recount

12

1           THAT'S GOING TO -- THAT'S THE PEOPLE'S POSITION AT

2    THIS POINT.

3           MR. SHEELA:  COUNSEL SAYS CASE LAW PERMITS THIS.  I'D

4    LIKE HIM TO NAME A CASE.  PEOPLE VERSUS SAM, 71 CAL. 2D, SAYS

5    THAT THE TESTIMONY OF A WITNESS THAT HE DOES NOT REMEMBER AN

6    EVENT IS NOT INCONSISTENT WITH HIS TESTIMONY.  AND, THEREFORE,

7    THE PRIOR INCONSISTENT STATEMENT MAY NOT BE ADMITTED.

8           IN PEOPLE VERSUS GREEN, ON REMAND FROM THE UNITED

9    STATES SUPREME COURT, THEY WERE FACED WITH A VERY, VERY SPECIFIC

10   SITUATION.  THE TRIAL OF MR. GREEN WAS A COURT TRIAL ON

11   FURNISHING MARIJUANA TO A MINOR.  THE SOLE WITNESS FOR THE CASE

12   WAS THE MINOR, A 17-YEAR-OLD BOY, WHO BEGAN TALKING ABOUT

13   KNOWING THE DEFENDANT. AND THEN AS THE COURT SAID ON REMAND,

14   WHEN HE REACHED A CRITICAL POINT IN HIS TESTIMONY THAT, I.E.,

15   WHETHER THE DEFENDANT DID IN FACT GIVE HIM THE MARIJUANA AS HE

16   AGREED TO, PORTER FIRST HESITATES BY SAYING QUOTE, "I JUST

17   MESSED AROUND FOR A WHILE...  WELL, YOU KNOW, I MEAN HE DIDN'T

18   COME OVER RIGHT AWAY."

19           FINALLY PORTER UNMASKED HIS APPARENT MOTIVE WHEN HE

20   PROPOSED, QUOTE, "LIKE I ALREADY SAID, I MEAN I'VE GOT A

21   CONSCIENCE AND I DON'T WANT TO."  CLOSE QUOTE.  HIS VOICE

22   TRAILED OFF AND HE WAS TOLD ONCE AGAIN TO SPEAK UP.

23           IN THE GREEN CASE THE WITNESS REMEMBERED EVERYTHING

24   UP TO THE POINT OF THE MARIJUANA TRANSFER AND THEN, "GEES, I

25   DON'T REMEMBER."  AND THE COURT IN GREEN SAID WELL, WE KNOW THE

26   RULE OF SAM, BUT WE ALSO KNOW THERE CAN BE SITUATIONS WHERE

27   TESTIMONY CAN BE INCONSISTENT IN EFFECT, MAYBE NOT INCONSISTENT

28   IN FACT BUT IN EFFECT.  AND HERE IT'S INCONSISTENT IN EFFECT.

1    THEREFORE WE ADMITTED IT.

2                THAT WENT UP TO THE UNITED STATES SUPREME COURT ON

3    THE ISSUE OF CONFRONTATION AND CROSS-EXAMINATION.  AND IT CAME

4    BACK, BECAUSE THE U.S. SUPREME COURT EXPRESSLY RESERVED AN

5    ISSUE, AND THAT ISSUE IS WHETHER THE APPARENT LAPSE OF MEMORY SO

6    AFFECT THE DEFENDANT'S OPPORTUNITY TO CROSS-EXAMINE HIM AT TRIAL

7    THAT THE ADMISSION OF HIS PRIOR STATEMENT VIOLATED HIS RIGHTS OF

8    CONFRONTATION.

9                THE COURT THERE SAID THAT WHEN YOU LOOK AT THE

10   STATEMENT IN THAT CASE, BECAUSE IT WAS ALL -- BECAUSE THE

11   WITNESS TESTIFIED "I DO REMEMBER TALKING TO THE OFFICER AND I DO

12   REMEMBER SPEAKING TO THE OFFICER." -- DID YOU GIVE AN OFFICER --

13   THESE ARE THE QUESTIONS:  "DID YOU GIVE AN OFFICER A STATEMENT

14   TO THE -- TO THE OFFICER ABOUT ACQUIRING AND SELLING MARIJUANA?"

15   "YES, I DID."

16               THEY SAID THAT BECAUSE THE WITNESS REMEMBERED

17   GIVING THE STATEMENT TO OFFICER WADE, W-A-D-E, THAT RIGHT OF

18   CONFRONTATION WAS PRESERVED, BECAUSE ANY POSSIBILITY OF FAULTY

19   REPRODUCTION OF WHAT THE WITNESS SAID TO OFFICER WADE WAS TAKEN

20   CARE OF BECAUSE THE WITNESS REMEMBERED SPEAKING TO OFFICER WADE.

21               TRANSLATE THAT INTO OUR CASE.  MR. AVILA WANTS TO

22   INTRODUCE A STATEMENT THAT MR. MADDUX SUPPOSEDLY TOOK FROM MR.

23   LUBITZ IN JUNE OF 1989.  MR. LUBITZ HAS SAID "I DON'T REMEMBER

24   SPEAKING TO HIM."  SO WE DO NOT -- WE HAVE EXACTLY THE SITUATION

25   THAT GREEN DID NOT HAVE, AND THAT IS, A WITNESS WHO DOESN'T

26   REMEMBER GIVING THE STATEMENT THAT HE'S BEING IMPEACHED WITH.

27   AND THAT IT WAS THAT EXCEPTION THAT THE CALIFORNIA SUPREME COURT

28   CARVED OUT AND SAID BECAUSE THE WITNESS REMEMBERS GIVING THE

1    (WHEREUPON THE JURORS LEAVE THE COURTROOM.)

2    THE COURT:  I WANTED TO PUT ON THE RECORD ONE ADDITIONAL

3    COMMENT IN CONNECTION WITH MY RULING ON THE -- CONCERNING THE

4    TESTIMONY OF MR. LUBITZ, AND MORE SPECIFICALLY MY FINDING

5    CONCERNING HIS CREDIBILITY AND WHETHER I FOUND CREDIBLE AND

6    BELIEVABLE HIS STATEMENTS THAT HE DID NOT RECALL EITHER CERTAIN

7    EVENTS OR WHETHER HE HAD MADE CERTAIN STATEMENTS TO MR. MADDUX.

8    AND I GUESS MORE PARTICULARLY IN THE AREA OF WHETHER HE HAD

9    MADE -- WHETHER HE HAD BEEN INTERVIEWED BY MR. MADDUX AND

10   WHETHER HE MADE CERTAIN STATEMENTS TO MR. MADDUX.

11   ON SEVERAL OCCASIONS MR. AVILA ASKED HIM TO REVIEW

12   A REPORT TO SEE IF THAT REFRESHED HIS RECOLLECTION.  AND

13   ALTHOUGH I DIDN'T SEE THE CONTENTS OF THAT REPORT, I DID OBSERVE

14   FROM MY VANTAGE POINT HERE FROM THE WITNESS STAND, THAT THE

15   DOCUMENT THAT MR. LUBITZ WAS HANDED, AND WHICH HE READ TO

16   HIMSELF, OR PORTIONS OF WHICH HE READ TO HIMSELF, WAS A

17   TYPEWRITTEN DOCUMENT ON THE LETTERHEAD OF THE OFFICE OF THE

18   DISTRICT ATTORNEY.  AND SO I PERCEIVED THAT TO BE SOME SORT OF A

19   WRITTEN DISTRICT ATTORNEY INVESTIGATIVE REPORT, AND I CONSIDERED

20   THAT IN MAKING MY RULING CONCERNING HIS CREDIBILITY.

21   ALL RIGHT, WE'LL RESUME AT 1:30.

22

23   (NOON RECESS TAKEN)

24   --oOo--

25

26

27

28

**ARGUMENT**

I.

**EVIDENCE OF WITNESS LUBITZ' PRIOR OUT-OF-COURT STATEMENTS WAS PROPERLY INTRODUCED INTO EVIDENCE**

Appellant contends the trial court erred when it admitted into evidence the out of court statements of Scott Lubitz, as Mr. Lubitz testimony consistently indicated he had no recall of talking to appellant about a shooting and had no recall of talking to an investigator about a shooting. (AOB 12-19.) Respondent disagrees.

Evidence Code 1235 provides:

"Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Evidence Code 770 provides:

"Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless:

"(a)  The witness was so examined while testifying as to give him an opportunity to explain or deny the statement; or

"(b)  The witness has not been excused from giving further testimony in the action."

Before a prior inconsistent statement may be admitted to attack credibility or as substantive evidence, the out-of-court statement must be inconsistent with some portion of the witness's current trial testimony. (*People* v. *Plasencia* (1985) 168 Cal.App.3d 546, 551.)

In the instant case, several of Mr. Lubiz' out-of-court statements were inconsistent with some portions of his trial testimony. Also, it is clear from the record that Lubitz' failure to remember was intentionally evasive and uncooperative.

Appellant's trial counsel objected to Mr. Lubitz being called to the stand, as Mr. Lubitz' testimony would be he did not remember telling anyone anything about the shooting. Appellant's trial counsel also objected to any statements Mr. Lubitz made to Investigator Maddux being entered into evidence. (IX RT 856-861.)

9

1  ADDITIONAL COMMENT IN CONNECTION WITH MY RULING ON THE
2  CONCERNING THE TESTIMONY OF MR. LUBITZ. AND MORE SPECIF-
3  ICALLY MY FINDING CONCERNING HIS CREDIBILITY AND WHETHER I FOUND
4  CREDIBLE AND BELIEVABLE HIS STATEMENTS THAT HE DID NOT RECALL
5  EITHER CERTAIN EVENTS OR WHETHER HE MADE CERTAIN STATEMENTS
6  TO MR. MADDUX. PETITIONER'S TRIAL COUNSEL OBJECTED TO MR. LUBITZ
7  BEING CALLED TO THE STAND. AS MR. LUBITZ TESTIMONY WOULD BE
8  HE DID NOT REMEMBER TELLING ANYONE ANYTHING ABOUT
9  THE SHOOTING. PETITIONERS TRIAL COUNSEL ALSO OBJECTED TO ANY
10 STATEMENTS MR. LUBITZ MADE TO INVESTIGATOR MADDUX BEING
11 ENTERED INTO EVIDENCE. (RT.9) Scott Lubitz, Never Testified
12 AT PRELIMINARY HEARING. (RT. 113)

13
14
15
16
17

18 SUPPORTING CASE:
19 CRAWFORD V. WASHINGTON. Cite as 124 S.CT. 1354 (2004)
20 KENTUCKY V. STINGER, 482 U.S. 730. 737 107 S.CT. 2658
21  96  L.Ed. 2d 631 (1987)
22 MARYLAND V. CRAIG, 497 U.S. 836,845. 110 S.CT. 3157.111
23 L.Ed. 2d 666 (1991)

24
25
26
27
28

1  Crawford v. Washington, Cite as 124 S.CT. 1354 (2004)
2  Kastucky v. Stinger, 482 U.S. 730, 737 107 S.CT. 2658 96. L.Ed
3  2d 631 (1987)
4  Maryland v. Craig. 497 U.S. 836, 845. 110 S.CT. 3157 111
5  L.Ed. 2d 666 (1991)

TELEPHONE INTERVIEW OF "BOB" BY DET. DEGELDER - SPDP 4-23-89          4

Bob     :   I agree totally.

Degelder:   And uh, you know, what you're telling me is is very very
            important.

Bob     :   I believe that.

Degelder:   You know, and uh...

Bob     :   See, I've done my time in jail too.  I just got out like not
            even two months ago.

Degelder:   Okay.

Bob     :   I did nine and a half months.

Degelder:   What did you do that for?

Bob     :   Uh, auto theft.  I got to go see my PO tomorrow, but you
            know, and that's why I don't want my name like I say on the
            report because I know they got to see it later.

Degelder:   Well, you know, being a witness to a serious crime is not
            something that's gonna hurt you.

Bob     :   Bull shit, man.  Come on now.

Degelder:   No, really.

Bob     :   No, no, really, I live here with my old lady and two kids.

Degelder:   Uh huh.  No I...

Bob     :   See...

Degelder:   I don't mean...

Bob     :   I do though.  You know.

Degelder:   You're talking about, you know... Kevin hurting you.

Bob     :   Yeah, I'm talking... yeah about shit coming back on me and
            the kids.  Shit the kids five years old and he's fighting
            every little nigger in the street now.

Degelder:   Okay.  What I'm talking to you about...

Bob     :   Yeah, but do you know what I'm talking to you about?  You
            hear what I'm saying?  I live here.

Degelder:   I understand.

TELEPHONE INTERVIEW OF "BOB" BY DET. DEGELDER - SPDP 4-23-89            2

Bob    :    How about uh (unintelligible) between 17 at the max uh 19 I'd
            say.  He's a black youth.  His name's Kevin.

Degelder: Kevin?

Bob    :    Kevin.  Yes sir.  Has a black Felie(?) hat he wears all the
            time.  Was the guy shot I believe with a .9mm.  Two times to
            the head.

Degelder: How do you know this, Bob?

Bob    :    Because he needs some more shells.  He has no more shells.

Degelder: Okay.

Bob    :    He likes to run his mouth and he's trying to get some shells
            desperately right now.

Degelder: What does he need?  Shells?

Bob    :    Yes.

Degelder: For his gun?

Bob    :    Yes.

Degelder: Oh, I see.

Bob    :    Also at the same time has a .38 for sale.

Degelder: Now, how do you know him?

Bob    :    Uh, from one of the other... I live over there.

Degelder: Okay.  Over on Bates?

Bob    :    Right.

Degelder: Let me tell you something, Bob.  Uh, did you witness this?

Bob    :    Uh, okay, I tell you what.  I live right across the street.
            I, I, a buddy of mine was over at my house.  We walked down
            the stairs and he he went out for his car and he leaves.  I
            walk up the stairs.  I wave back.  I look out the window to
            watch him leave.

Degelder: Um hm.

Bob    :    I see the taxicab come down the street.  All right?  Just as
            he passes, and I'm just looking out the window.

1  A MURDER CASE WHO WAS IN THE CAB AT THE TIME THAT THE EVENTS

2  OCCURRED THAT TESTIFIED.  THERE WAS A WITNESS TO EACH OF THE

3  ALLEGED PIZZA ROBBERIES THAT TESTIFIED, AND THERE WERE CERTAIN

4  POLICE OFFICERS THAT TESTIFIED.  THAT WAS THE LIMITED EXTENT

5  OF THE TESTIMONY AT THE PRELIMINARY EXAMINATION.

6         THERE ARE A NUMBER OF OTHER WITNESSES AVAILABLE,

7  SOME OF WHICH HAVE TESTIFIED IN THESE PRETRIAL MOTIONS, THAT

8  DID NOT TESTIFY AT THE PRELIMINARY EXAMINATION.  SO IT'S NOT A

9  SITUATION WHERE WE HAVE PREVIOUS TESTIMONY SHOULD SOMEONE

10 BECOME UNAVAILABLE IN THE LEGAL SENSE.

11        THE COURT:  WELL, LET'S GET DOWN TO IT, MR. JOHNSON.  DO

12 YOU WANT TO REPRESENT YOURSELF TRUTHFULLY OR DO YOU WANT ME TO

13 APPOINT ANOTHER LAWYER?

14        THE DEFENDANT:  I WOULD LIKE ANOTHER LAWYER IF IT'S ALL

15 RIGHT.

16        THE COURT:  IN PREFERENCE TO REPRESENTING YOURSELF?

17        THE DEFENDANT:  YES.

18        THE COURT:  THAT WAS THE OPTION IN CASE I DIDN'T ALLOW

19 THE FORMER?

20        THE DEFENDANT:  YES.

21        THE COURT:  YOU UNDERSTAND IF I DO APPOINT ANOTHER LAWYER

22 THAT I'M GOING TO HAVE TO REQUIRE YOU TO WAIVE TIME EVEN

23 BEYOND THAT MAGICAL DATE YOU SAID, THE 26TH, BECAUSE I CAN'T

24 SEE ANOTHER LAWYER GETTING UP TO SPEED --

25        THE DEFENDANT:  OKAY.

26        THE COURT:  -- ON A FIRST DEGREE HOMICIDE CHARGE IN ONE

27 MONTH.  AT THE SAME TIME, I DON'T THINK, IF YOU WERE IN

28 ANOTHER POSITION, YOU'D DISAGREE WITH THE FACT THAT I HAVE TO

1          THE CLERK:  PLEASE BE SEATED.  FOR THE RECORD, STATE

2    YOUR FULL NAME, PLEASE, AND SPELL YOUR LAST NAME.

3          THE WITNESS:  ROBERT OSCAR HAMMAR, JUNIOR, H-A-M-M-A-R.

4          THE CLERK:  THANK YOU.

5

6                          DIRECT EXAMINATION

7    BY MR. AVILA:

8          Q    SIR, HOW OLD ARE YOU?

9          A    AH, 34.

10         Q    DIRECTING YOUR ATTENTION TO MAY THE 22ND OF 1989,

11   WHERE DID YOU LIVE?

12         A    ON BATES STREET.

13         Q    DO YOU RECALL YOUR RESIDENCE ADDRESS?

14         A    NUMBER 50 -- I AM NOT SURE OF THE NUMBER RIGHT

15   NOW.  IT'S THE BUILDING RIGHT BEHIND ME, THOUGH.

16         Q    DIRECTING YOUR ATTENTION TO THE PHOTOGRAPH THAT IS

17   BEHIND YOU, WHICH WE PREVIOUSLY LABELED AS PEOPLE'S EXHIBIT

18   NO. 1, DOES THIS PARTICULAR PHOTOGRAPH SHOW WHERE YOU LIVED?

19         A    YES, STREET.  BUILDING THERE.

20         Q    LET ME HAND YOU THE POINTER AND ASK YOU TO POINT TO

21   THE BUILDING?

22         A    THIRD BUILDING, UPSTAIRS APARTMENT RIGHT HERE.

23   THAT'S OUR APARTMENT.

24         Q    FOR THE RECORD, YOU HAVE JUST POINTED TO A

25   RECTANGULAR-SHAPED BUILDING THAT IS ON THE SOUTH SIDE OF

26   BATES STREET DIRECTLY ACROSS THE STREET FROM A BUILDING

27   PREVIOUSLY LABELED 5722.

28              ON THAT DATE, DID YOU LIVE UPSTAIRS OR DOWNSTAIRS?

1        A    UPSTAIRS.

2        Q    IS THAT BASICALLY AN APARTMENT COMPLEX?

3        A    YES, SIR.

4        Q    AFTER MIDNIGHT ON MAY 22ND OF 1989, WERE YOU HOME?

5        A    YES, SIR.

6        Q    DURING THE TIME THAT YOU WERE HOME, IF AT ALL, DID

7   YOU EVER SEE A CAB?

8        A    YES, SIR.  SAW A CAB COME DOWN THE STREET, GO BACK

9   AROUND, BACK THERE.

10       Q    WHEN YOU SAY YOU SAW A CAB COME DOWN THE STREET AND

11  GO BACK AROUND THERE, WHAT ARE YOU REFERRING TO?

12       A    WELL, I WAS DOWNSTAIRS SAYING GOODBY TO A FRIEND OF

13  MINE.  HE LIVES OVER THE HOUSE.  HE WAS WORKING OUT ON A --

14       MR. SHEELA:  EXCUSE ME, YOUR HONOR.  IF I COULD, I

15  OBJECT TO THE ANSWER AS NONRESPONSIVE AND ASK IT BE STRICKEN.

16       THE COURT:  ALL RIGHT.  IT'S GRANTED.  THE ANSWER IS

17  STRICKEN.

18            ASK HIM THE QUESTION AGAIN.

19            JUST LISTEN CAREFULLY TO THE PRECISE QUESTION, THEN

20  JUST ANSWER THAT QUESTION.

21       THE WITNESS:  SORRY.

22  BY MR. AVILA:

23       Q    WHEN YOU SAY YOU SAW A CAB GO BY, ON WHAT STREET

24  WAS THE CAB?

25       A    IT WAS COMING DOWN BATES STREET.

26       Q    AT THE TIME THAT YOU SAW THIS CAB GO BY, WHERE WERE

27  YOU?

28       A    IN FRONT OF THE APARTMENT, MY APARTMENT BUILDING.

1    Q    WOULD THAT PUT YOU AT STREET LEVEL?

2    A    YES, SIR.

3    Q    YOU INDICATED THAT AT SOME POINT THE CAB WENT

4    AROUND.  WHAT DO YOU MEAN BY THAT ASSERTION?

5    A    WENT DOWN TO THE END OF THE STREET AND TURNED RIGHT

6    AND WENT -- CAME BACK UP THE OTHER ALLEY BEHIND THE OTHER

7    BUILDINGS.

8    Q    NOW, LET ME HAND YOU THE POINTER AND I'D LIKE YOU

9    TO POINT NOW ON PEOPLE'S 1 TO THE END OF THE STREET, IF IT'S

10    DEPICTED ON THE PHOTOGRAPH?

11    A    OKAY.  CAB CAME DOWN THE STREET AND WENT BACK

12    AROUND THIS WAY AND THEN UP, AND IT COULDN'T GO THROUGH

13    BECAUSE THAT NEW FENCE WAS GOING UP, CAME UP AND STOPPED

14    HERE.

15    Q    LET ME DESCRIBE WHAT YOU JUST DID FOR THE RECORD.

16    FOR THE RECORD YOU TOOK THE POINTER FROM -- IN A

17    RIGHT TO LEFT DIRECTION ON THE DIAGRAM.  YOU INDICATED THE

18    VEHICLE CAME DOWN BATES STREET TOWARDS THE CUL-DE-SAC THAT

19    HAS PREVIOUSLY BEEN REFERRED TO AND TOOK A ALLEYWAY, FOLLOWED

20    THE ALLEYWAY AROUND TO THE NORTH AND ALONG IN BETWEEN SOME

21    GARAGES AND SOME APARTMENT BUILDINGS THAT ARE ON THE NORTH

22    SIDE OF 57 -- ON THE NORTH SIDE OF BATES STREET, STOPPING

23    BEHIND 5722 BATES STREET, WHERE THERE IS A FENCE WHICH YOU

24    POINTED TO, THE NORTHERLY EDGE OF THAT PARTICULAR BUILDING.

25    NOW, WHEN THE CAB WENT BY, COULD YOU SEE HOW MANY

26    OCCUPANTS WERE IN THERE?

27    A    I BELIEVE IT WAS FOUR, COUNTING THE DRIVER.

28    Q    WHAT COULD YOU ACTUALLY SEE?

"Q.  Did you ever talk to Investigator Maddux regarding some pizza robberies?

"A.  No.  Not that I recall.

. . .

"Q.  Did you ever talk to -- Did you talk to Investigator Maddux about whether or not you saw the man you pointed out in court before the cabdriver shooting?

"A.  No, not that I recall."  (IX RT 903-904.)

Mr. Lubitz then testified he did not remember ever talking to Investigator Maddux.  Mr. Lubitz' recollection was not refreshed after he reviewed an investigation report.  (IX RT 904-906.)

Investigator Stanley Maddux testified he interviewed Scott Lubitz on June 16, 1989.  He testified Lubitz told him appellant admitted he robbed a pizza man of his car, money and some pizzas. Lubitz also told Investigator Maddux he saw appellant with Greg Wyatt before the shooting.  Appellant told him they were going to make some money that night.  Appellant then showed Lubitz a pistol that appellant had in his pant's waistband.  Lubitz told Investigator Maddux that appellant told him they were going to rob a taxi driver.  Mr. Lubitz told Investigator Maddux the next afternoon, appellant was commenting on the talk around the neighborhood about the killing and told him if anybody fingers him there will be more bodies laying around.  Mr. Lubitz told Maddux the day after that, appellant said he needed some 9 millimeter bullets, that he had used his last two a couple of nights before.  (IX RT 1057-1062.)

In general, the testimony of a witness to the effect that he does not remember an event is not "inconsistent" with a prior statement by him regarding that event.  (*People* v. *Green* (1971) 3 Cal.3d 981, 988.) Prior statements may not be introduced unless it can be clearly established from the record that there is a reasonable basis for concluding that the witness' "I don't remember" responses are deliberately evasive and inherently incredible.  (*People* v. *Green, supra,* 3 Cal.3d 981 at pp. 988-989; *People* v. *O'Quinn* (1980) 109 Cal.App.3d 219, 225-226.)  Only then will the court deem such evasiveness to be an implied denial or implied inconsistency to the events established by the prior statements.  (*Ibid.*)

In the cases where a witness's lack of recall has been deemed to be an implied denial or implied inconsistency, the evasiveness is

11

statements Scott Lubitz had made to him on June 16, 1989. Maddux testified Lubitz said appellant told him he (appellant) jacked up a pizza man and took his car, money, and pizzas. According to Maddux, Lubitz also said that on the night of the shooting appellant was with Greg Wyatt; appellant said he was going to make some money tonight, and showed a pistol tucked in his waist band; and appellant said they were going to rob a taxicab driver. The next day, according to Maddux's version of what Lubitz told him, in reference to the shooting the previous night appellant said if anyone fingered him there would be more bodies laying around. Maddux testified Lubitz said appellant also said he needed some nine millimeter bullets because he had used his last two a couple of nights earlier. (R.T. 1059-1062.) Maddux also testified Lubitz said appellant said he (appellant) did the two pizza robberies, and Travis and Greer were just there. (R.T. 1068-1069.)

B.  DISCUSSION

Evidence Code section 1235 states an exception to the rule of inadmissibility of out-of-court statements. Such hearsay is admissible if it "is _inconsistent_ with [the witness's] testimony at the hearing . . .."

The established general rule for a witness who testifies he _does not recall_ the event is that a former out-of-court statement he made, purporting to recount the event, is _not inconsistent_

13

1   Petitioner is without Remedy Save By Writ of
2   Habeas Corpus.
3                          Wherefore, Petitioner Prays The Court:
4   Will Grant His Habeas Corpus And Reverse His
5   Conviction for A New Trial.
6                          In The Alternative, Order The
7   Attorney General To Show Cause why The Habeas
8   Corpus Should Not Be Granted. And Grant Petitioner
9   Any Further Relief This Court Deems Appropriate
10  In The Interest of Justice.

11
12
13  Dated: 5-28-2008

14                              Respectfully Submitted

15
16
17                              Kevin A. Johnson

18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE

Declaration of service by mail

I, _Kevin A. Johnson_ , declare that I am over the age of eighteen (18) and that I am not a party to this action. on MAY , 2008 I deposited a copy of the following documents:

3 - PETITION FOR WRIT of Habeas Corpus
ENCLUDING EXhibits.

I placed the above listed documents in a sealed envelope with the postage prepaid into the United States mail outlet via an authorized California Department of Corrections employee at Ironwood State Prison, in Riverside County, Blythe, California, and addressed as follows:

UNITED STATES DISTRICT COURT
— SOUTHERN DISTRICT OF California —
SAN DIEGO, CA. 92101 - 8900

BIll LockYer
— ATTORNEY GENERAL —
1300 I STREET, SuiTE # 1740
SACARMENTO, CA. 95814

I declare under penalty of perjury by the laws of the State of California that the foregoing is true and correct.

Date _MAY 28_, 2008          Signature _Kevin A. Johnson_

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1983, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Kevin A. Johnson

**DEFENDANTS**

Debra Dexter

FILING FEE PAID
Yes  No
IFP MOTION FILED
Yes  No
COPIES SENT TO
Court  Prob

FILED
MAY 2 9 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**  Riverside
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Kevin A. Johnson
PO Box 2199
Blythe, CA 92226
E-63602

**ATTORNEYS (IF KNOWN)**

'08 CV 0956 WQH WMc

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1398ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23  DEMAND $  Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**  JUDGE  Docket Number

DATE  5/29/2008  SIGNATURE OF ATTORNEY OF RECORD

CR